UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner

MICHAEL STACY GRAVES, JR. AND
 LISA ANNE GRAVES

MEMORANDUM OPINION*

v.        Record No. 1888-16-2
PER CURIAM
MAY 9, 2017

NEIL EDWARD JONES

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Ricardo Rigual, Judge

(Brenda Lee Greene; Leah T. Dubuisson; Strentz & Greene, PLC, on
brief), for appellant.  Appellant submitting on brief.

No brief for appellee.

Michael Stacy Graves, Jr. and Lisa Anne Graves appeal an order denying their petition for

adoption.  Mr. and Mrs. Graves argue that the trial court erred by (1) requiring them "to show both

that the adoption was in the child's best interests and that a continuing relationship with [Neil

Edward Jones] would be detrimental to the child;" (2) failing to consider Code § 63.2-1202(H) and

finding that Code § 63.2-1202(H) is not applicable to stepparent adoptions pursuant to Code

§ 63.2-1241; (3) failing to grant the petition for adoption "upon the presentation of clear and

convincing evidence that an order of adoption, upon consideration of the factors set forth under

Virginia Code § 63.2-1205, was in the best interests of the child and consent was withheld contrary

to the best interests of the child;" and (4) finding that the Spotsylvania County Department of Social

Services (the Department) "did not investigate factors relevant to determining whether consent of

the birth parents is withheld contrary to the best interests of the child when the report of

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

investigation of the Department . . . complied with Virginia Code § 63.2-1242." Upon reviewing the record and opening brief, we reverse and remand this case to the trial court for further proceedings consistent with this opinion.

BACKGROUND[1]

Mrs. Graves and Mr. Jones are the biological parents to one child, who was born in January 2006. Mrs. Graves and Mr. Jones married on November 4, 2006, separated on May 18, 2010, and divorced on August 1, 2011. On April 28, 2011, an order was entered that awarded Mrs. Graves sole legal and physical custody of the child.

Mr. and Mrs. Graves started living together on August 1, 2012 and married on October 11, 2012.

Mrs. Graves testified that Mr. Jones' visitation was "sporadic." He followed the visitation schedule set out in the April 28, 2011 order for a "brief period," but stopped seeing the child in the summer of 2013.

In November 2013, Mr. Jones pled guilty to multiple felonies and served three years in prison. According to Mrs. Graves, Mr. Jones did not contact her or the child while he was incarcerated. However, Mr. Jones stated that he sent a "few letters" in the first year of his incarceration, but they were returned to him because Mrs. Graves had moved. He admitted that he made no other attempts to contact the child. Mrs. Graves explained that she was in contact with Mr. Jones' mother and sister while he was incarcerated. Mrs. Graves moved on April 29, 2014, and said that Mr. Jones' sister was aware of the new address. She admitted that she did not give Mr. Jones thirty days advance notice of her change of address, as required by the April 28, 2011 order.

---

[1] Pursuant to Rule 5A:8, the record contains a written statement of facts, but no transcript.

On April 8, 2015, Mr. Graves filed the petition to adopt the child. Mrs. Graves consented to the adoption, but Mr. Jones did not. On May 18, 2015, the circuit court entered an order of reference, which directed the Department to "make a thorough investigation of the matter in accordance with section 63.2-1242 of the Virginia Code, and shall report thereon in writing to this Court within 60 days after the copy of the petition herein is forwarded to it." The Department subsequently filed its report and recommended that a final order of adoption be entered.

Mr. Jones was released from prison on March 30, 2016. He testified that he tried to locate Mrs. Graves by calling friends, but he did not ask his guardian *ad litem*, who had been appointed to represent him while he was incarcerated, about Mrs. Graves' whereabouts.[2] He also did not look at the adoption papers he received to determine her address.

On June 17, 2016, Mr. Jones was arrested for violating his probation. He tested positive for "numerous illicit substances on multiple occasions." The court revoked his suspended sentences and re-suspended them. Mr. Jones was released from jail on August 23, 2016. He did not attempt to contact Mrs. Graves or the child after his release in August.

On October 12, 2016, the parties appeared before the circuit court for a hearing on the petition for adoption. At trial, Mr. Jones admitted that he had not had contact with the child since the child was six years old. The child was ten years old at the time of the hearing. When asked "why he had not reached out" to the child, Mr. Jones explained that he had "ongoing substance abuse issues." Mr. Jones further stated that "he was unsure as to whether he would be able to complete all of the requirements for his probation." He could not articulate any future plans that he had for his relationship with the child.

---

[2] On September 28, 2016, the circuit court entered an order allowing the guardian *ad litem* to withdraw.

- 3 -

Mr. Graves testified that he wanted to adopt the child because he had been a father to the child since he married Mrs. Graves in 2012. Mr. Graves explained that he played an active role in the child's life and supports him financially.

After hearing the evidence and argument, the circuit court asked whether any evidence had been presented by Mr. and Mrs. Graves that an ongoing relationship between Mr. Jones and the child would be detrimental to the child. Counsel for Mr. and Mrs. Graves argued that they were not required to present evidence on that matter and asked the circuit court to find that Mr. Jones had withheld his consent to the adoption contrary to the best interests of the child. Counsel also argued, in the alternative, that Mr. Jones' consent was not required pursuant to Code § 63.2-1202(H) because Mr. Jones had abandoned the child. The circuit court disagreed with Mr. and Mrs. Graves' arguments and denied the petition for adoption.

On October 31, 2016, the circuit court entered the final order, which stated, in part,

> Petitioner's evidence was insufficient to show that father's consent to the adoption was withheld contrary to the best interests of the child under Virginia Code Section 63.2-1241. The court further finds that Virginia Code Section 63.2-1202(H), which waives the consent requirement for certain adoptions not under consideration in this petition, is not applicable to this proceeding under 63.2-1241.

Mr. and Mrs. Graves noted their objections to the order and subsequently filed a motion to reconsider.[3] This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin

---

[3] The record does not include an order regarding the motion to reconsider; however, the written statement of facts indicates that the circuit court denied the motion to reconsider.

v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

*Assignment of error #1*

Mr. and Mrs. Graves argue that the circuit court erred by requiring them to show both that the adoption was in the child's best interests and that a continuing relationship with Mr. Jones would be detrimental to the child.

As discussed in Copeland v. Todd, 282 Va. 183, 196, 715 S.E.2d 11, 18 (2011) (citing 2006 Acts chs. 825, 848 (effective July 1, 2006)), "the General Assembly amended Code § 63.2-1205 to remove the language requiring a finding of detriment to the child to permit adoption without parental consent." The Supreme Court of Virginia explained that "although the General Assembly retained the factors previously required to determine whether the failure to grant the petition for adoption would be detrimental to the child, they are now factors [in Code § 63.2-1205 that are] relevant to determining whether consent is withheld contrary to the 'best interests of the child.'" Id. at 197, 715 S.E.2d at 18 (quoting Code § 63.2-1205).

Therefore, the circuit court erred when it inquired during closing argument as to whether an ongoing relationship between the child and Mr. Jones would be detrimental to the child because it was no longer a factor for a court to consider.

*Assignment of error #2*

Mr. and Mrs. Graves argue that the circuit court erred when it found that Code § 63.2-1202(H) does not apply to stepparent adoptions filed pursuant to Code § 63.2-1241.

Code § 63.2-1202(H) states:

> No consent shall be required of a birth parent who, without just cause, has neither visited nor contacted the child for a period of six months immediately prior to the filing of the petition for adoption or the filing of a petition to accept consent to an adoption. The prospective adoptive parent(s) shall establish by clear and convincing evidence that the birth parent(s), without just cause, has

> neither visited nor contacted the child for a period of six months immediately prior to the filing of the petition for adoption or the filing of a petition to accept consent to an adoption. This provision shall not infringe upon the birth parent's right to be noticed and heard on the allegation of abandonment. For purposes of this section, the payment of child support, in the absence of other contact with the child, shall not be considered contact.

In the petition for adoption, Mr. and Mrs. Graves asserted that Mr. Jones had had no contact with the child since August 2013.[4] Therefore, they argued that his consent was not necessary pursuant to Code § 63.2-1202(H) because he had not had contact with the child for six months prior to the filing of the petition for adoption. At trial, they also argued that Mr. Jones' consent to the adoption was not required pursuant to Code § 63.2-1202(H). The circuit court found that "Virginia Code Section 63.2-1202(H), which waives the consent requirement for certain adoptions not under consideration in this petition, is not applicable to this proceeding under 63.2-1241."

"Unlike questions of fact, . . . the trial court's statutory interpretations and legal conclusions are subject to *de novo* review." T.S.G. v. B.A.S., 52 Va. App. 583, 589, 665 S.E.2d 854, 857 (2008) (citing Ipsen v. Moxley, 49 Va. App. 555, 560, 642 S.E.2d 798, 800 (2007)).

"Disposition of this argument is governed by Virginia's statutory scheme for adoptions, set forth in Title 63.2, Chapter 12, of the Code (Code §§ 63.2-1200 through 63.2-1253)." Id. at 590, 665 S.E.2d at 858. "Under the '[g]eneral [p]rovisions' portion of Chapter 12 (Article 1), Code § 63.2-1202 addresses the requirements for the birth parent's consent to the proposed adoption" and the exceptions when consent is not required. Id. at 590-91, 665 S.E.2d at 858.

---

[4] Mr. Jones said that he tried to send a "few letters" during the first year of his incarceration, but they were returned because Mrs. Graves no longer lived at that address.

Mr. and Mrs. Graves argue that Code § 63.2-1202(H) applies to Article 4 of Chapter 12 (Code §§ 63.2-1241 and -1242), which governs stepparent adoptions.[5]  Neither Code § 63.2-1241 nor Code § 63.2-1242 "expressly or implicitly exclude or modify the applicability" of Code § 63.2-1202.  T.S.G., 52 Va. App. at 593, 665 S.E.2d at 859.  "We thus conclude that had the legislature intended to exclude or modify [Code § 63.2-1202's] applicability to [Code § 63.2-1241], it would have plainly done so."  Id.

Accordingly, we find that the circuit court erred in concluding that Code § 63.2-1202(H) does not apply to stepparent adoptions.

*Assignment of error #3*

Mr. and Mrs. Graves argue that the circuit court erred by denying the petition for adoption and holding that their evidence was insufficient to prove that Mr. Jones' consent was withheld contrary to the best interests of the child.

"We have consistently held that to grant a petition for adoption over a birth parent's objection, there must be more than a mere finding that the adoption would promote the child's best interests."  Copeland, 282 Va. at 197, 715 S.E.2d at 19 (citing Malpass v. Morgan, 213 Va. 393, 398-99, 192 S.E.2d 794, 798-99 (1972)).  "Virginia's statutory scheme for adoption, including Code §§ 63.2-1205 and -1208, defines the best interests of the child in terms that require more expansive analysis than when the contest is between two biological parents."  Id. at 199, 715 S.E.2d at 20.

Code § 63.2-1205 states:

> In determining whether the valid consent of any person whose
> consent is required is withheld contrary to the best interests of the
> child, . . . the circuit court . . . shall consider whether granting the
> petition pending before it would be in the best interest of the child.
> The circuit court . . . shall consider all relevant factors, including
> the birth parent(s)' efforts to obtain or maintain legal and physical

---

[5] "Chapter 12 of Title 63.2 addresses five types of adoptions:  agency adoptions (Article 2); parental placement adoptions (Article 3); stepparent adoptions (Article 4); close relative adoptions (Article 4.1); and adult adoptions (Article 5)."  Id. at 591 n.5, 665 S.E.2d at 858 n.5.

custody of the child; whether the birth parent(s) are currently willing and able to assume full custody of the child; whether the birth parent(s)' efforts to assert parental rights were thwarted by other people; the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child.

Mr. and Mrs. Graves presented evidence regarding the factors in Code § 63.2-1205. The evidence proved that Mrs. Graves has had sole legal and physical custody of the child since the April 28, 2011 order, and Mr. Jones had not filed any motions to modify custody or visitation since the entry of that order. According to Mrs. Graves, Mr. Jones' visitation with the child was sporadic and stopped altogether in the summer of 2013. Mr. Jones was incarcerated for three years, and shortly after he was released, he violated his probation and was incarcerated again for several months. Mr. Jones testified that he had ongoing substance abuse issues and was not sure that he would be able to comply with the terms of his probation. When asked, he could not articulate any future plans that he had for a relationship with the child. Mr. Jones had not seen the child since the child was six years old, and the child was ten years old at the time of the hearing. Mr. Jones stated that he did not know where Mrs. Graves was living when he was incarcerated and after he was released. Mrs. Graves did not provide him with her new address when she moved, but she did notify his sister of her new address. The evidence also proved that Mr. Jones did not ask his guardian *ad litem* or his family if they had her address. The child has been living with Mrs. Graves since his birth, and with Mr. and Mrs. Graves since 2012. Mr. Graves acts as a father to the child and supports the child financially.

The record does not include the court's findings with respect to the factors in Code § 63.2-1205. Therefore, this Court is unable to determine why the circuit court held that the evidence presented by Mr. and Mrs. Graves did not prove that Mr. Jones was withholding his

consent to the adoption contrary to the best interests of the child. The case is remanded for the circuit court to articulate its findings for the record.

*Assignment of error #4*

Mr. and Mrs. Graves argue that the circuit court erred in finding that the Department did not investigate the factors relevant to determining whether Mr. Jones' consent was withheld contrary to the best interests of the child. The final order states, in part:

> UPON CONSIDERATION of the evidence, argument of Counsel, report of investigation of the Spotsylvania Department of Social Services (which report did not investigate factors relevant to determining whether consent of the birth parent is withheld contrary to the best interest of the child, including the factors set forth in Va. Code Section 63.2-1205) . . . .

On May 18, 2015, the circuit court entered an order of reference. The order of reference stated that the circuit court ordered the Department to

> make a thorough investigation of the matter in accordance with section 63.2-1242 of the Virginia Code, and . . . report thereon in writing to this Court within 60 days after the copy of the petition herein is forwarded to it, and . . . cause a copy of said report to be served upon the Commissioner of Social Services in accordance with the aforesaid statute.

Code § 63.2-1241(C) states, "The order of reference *may* include a requirement that the local director investigate factors relevant to determining whether consent of a birth parent is withheld contrary to the best interests of the child, including factors set forth in § 63.2-1205." (Emphasis added.) In this case, the order of reference did not require the Department to investigate the Code § 63.2-1205 factors.

Therefore, the circuit court correctly stated that the Department's report "did not investigate factors relevant to determining whether consent of the birth parent is withheld contrary to the best interest of the child, including the factors set forth in Va. Code Section 63.2-1205."

However, the Department was not required to investigate those factors because the order of reference did not include such a requirement.

CONCLUSION

For the foregoing reasons, the trial court's ruling is reversed and remanded for the circuit court to reconsider the petition for adoption in light of Code § 63.2-1202(H) and/or the factors in Code § 63.2-1205.

Reversed and remanded.